# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

TARVEZ Q. SMITH,

    Petitioner,

v.                                          Case No. 5:23-cv-00360

WARDEN, FCI BECKLEY,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and his Motion for Court to Grant Home Confinement or Adjust Probation (ECF No. 12). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and it has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was convicted in the United States District Court for the Central District of Illinois of one count of distribution of heroin containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). He was sentenced to a 90-month term of imprisonment, followed by a six-year term of supervised release. *United States v. Smith*, No. 2:17-cr-20056-SLD-EIL-1, ECF No. 28 (C.D. Ill. May 14, 2019). At the time he filed the instant petition, Petitioner was incarcerated at the Federal Correctional Institution at Beckley, West Virginia ("FCI Beckley"). However, according to the Federal Bureau of Prisons ("BOP") website, he has been transferred to a Residential Reentry

Center ("RRC") in or near Chicago, Illinois, with a projected release date of April 14, 2024.[1]

On April 28, 2023, the Clerk of this Court received and docketed a letter from Petitioner which was construed as a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking an award against his sentence of 365 days of federal earned time credit ("FTC") pursuant to the First Step Act of 2018 ("FSA"), Public Law 115–391. (ECF No. 1). Petitioner's letter-form petition acknowledges that he had been determined to be at a medium risk level for recidivism and that he had not fully exhausted his administrative remedies before filing his petition. (ECF No. 1 at 1).

On July 26, 2023, Respondent filed a Response to Order to Show Cause (ECF No. 11) asserting that Petitioner's petition must be dismissed for failure to exhaust administrative remedies and that Petitioner is not entitled to his requested relief, both because he was not then eligible for automatic application of FTC and because the calculation of his risk recidivism score and his prerelease custody placement are discretionary determinations by the BOP that are not subject to judicial review. Petitioner did not file a reply brief.

However, on July 31, 2023, Petitioner, while still at FCI Beckley, filed another letter-form motion requesting that this court grant him home confinement or adjust his "probation" time (presumably referring to his term of supervised release). (ECF No. 12). Petitioner's motion asserts that his "halfway house date is 10-17-23 so I'm not able to get

---

[1] The fact that Petitioner has been released to an RRC may have rendered his claim moot, as any FTC to which he may have been entitled should have been applied in the course of such release. However, because Petitioner alternatively seeks home confinement or a shortened term of supervision, out of an abundance of caution, the undersigned will nonetheless address the merits of the parties' arguments and propose a recommendation for disposition thereon.

2

the year off my sentence." (*Id.*) Thus, he requests that the court "look into the home confinement or the year off my probation." (*Id.*) Petitioner provides no further support for his motion. Respondent was not ordered to respond to Petitioner's follow-up motion.

## ANALYSIS

### A. Exhaustion of Administrative Remedies.

Generally, a federal prisoner must exhaust available administrative remedies before filing a habeas corpus petition. *Boudemiene v. Bush*, 553 U.S. 723 (2008); *Braden v. 30th Judicial Cir. Ct. of Kentucky*, 410 U.S. 484, 490-01 (1973). Respondent first asserts that Petitioner's petition must be dismissed because he failed to exhaust his administrative remedies prior to filing his petition in this court. *See McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (per curiam) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *United States v. Odiana*, 7 F.3d 227, 227 (4th Cir. 1993) (per curiam) (same); *see also United States v. Mercado*, 37 F. App'x 698, 699 (4th Cir. 2002) (per curiam) (affirming dismissal for failure to exhaust BOP's administrative remedies prior to filing § 2241). (ECF No. 11 at 2-3).

As noted by Respondent, although the exhaustion requirement concerning § 2241 petitions is judicially imposed, rather than statutorily required, and courts retain discretion to waive the requirement when exhaustion is futile, unless the agency is certain to rule adversely, failure to exhaust is generally not excused. *Reeder v. Phillips*, No. 1:07-cv-138, 2008 WL 2434003, at *3 (N.D. W. Va. June 12, 2008); *see also Woltz v. Ziegler*, No. 5:12-cv-0238, 2012 WL 1599916, at *3 (S.D. W. Va. Mar. 23, 2012)

("Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under Section 2241." (citations omitted)), *report and recommendation adopted*, 2012 WL 1599894, at *1 (S.D. W. Va. May 7, 2012). Respondent further contends that "[a]dministrative exhaustion serves a number of purposes outside of granting relief[;]" namely, development of a factual record to aid the Court. (*Id.* at 2). Specifically, Respondent asserts:

> [T]he remedy responses would set out whether Petitioner's FTCs are calculated correctly, whether Petitioner is eligible to earn time credits based on his current offense, whether the courses he has taken and the work he has performed were assigned for purposes of the FSA, whether the courses and work qualify for time credits, whether his discipline history would reduce the number of credits, how his risk recidivism level was calculated, as well as well as other offender specific matters.

(*Id.* at 2-3).

According to Petitioner, at the time he filed his letter-form petition, he had filed an informal (BP-8) request and a formal administrative remedy at the institutional level (BP-9), but had not received a timely response thereto. (ECF No. 1 at 1). Nonetheless, Respondent asserts that the failure to receive a response is not a sufficient basis for Petitioner to assert that the administrative remedy process was unavailable or futile because the administrative remedy policies and procedures permit an inmate to deem a remedy denied at a particular level if no response is timely received and further permits the inmate to proceed to the next administrative level. (ECF No. 11 at 3) (citing BOP Program Statement 1330.18, Administrative Remedy Program, at 14 (Jan. 6. 2014), *available at* https://www.bop.gov/policy/progstat/1330_018.pdf (emphasis added).

Thus, Respondent asserts that, when he did not receive a response at the institutional level, Petitioner should have considered such failure to respond as a denial at that level and proceeded to file an administrative remedy appeal to the Regional Office level, and then the Central Office level, to exhaust the administrative remedy. (*Id.*) The undersigned agrees. Petitioner admittedly did not complete the exhaustion process prior to filing the instant petition and he has not demonstrated that the administrative remedy process was either futile or unavailable to him.

Because it appears from the record before this court that Petitioner did not properly exhaust the available administrative remedies before filing the instant petition, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's § 2241 petition (and his accompanying Motion for Home Confinement or to Adjust Probation (ECF No. 12)) should be denied and dismissed for failure to exhaust administrative remedies.

### B. The relevant FSA eligibility provisions.

Notwithstanding Petitioner's failure to exhaust administrative remedies, Respondent's response also asserts that his petition may be denied on the merits because, at the time he filed his petition, Petitioner was not eligible for application of FTC due to his medium recidivism risk classification.[2] (ECF No. 11 at 4). Before turning to the merits of Petitioner's claim, the undersigned begins with a discussion of the

---

[2] The FSA directed the BOP to develop a risk assessment tool, now known as PATTERN, which stands for "Prisoner Assessment Tool Targeting Estimated Risk and Needs," (also referred to herein as the "System"). PATTERN is used to calculate each inmate's recidivism risk score based on considerations such as age, severity of current offense, history of violence, and other factors. *See generally* 2020 Review and Revalidation of the First Step Act Risk Assessment Tool, DOJ, Office of Justice Programs, National Institute of Justice (January 2021), available at https://www.ojp.gov/pdffiles1/nij/256084.pdf. After calculation of the recidivism risk score, the inmate is classified as a minimum, low, medium, or high recidivism risk. (ECF No. 11 at 4).

pertinent provisions of the FSA. In 2018, the FSA amended 18 U.S.C. § 3621, governing federal prison sentences, and added related provisions in sections 3624 and 3632 concerning recidivism reduction programming and incentives.

The FSA sets out statutory criteria defining who is eligible to earn and apply time credits for early release from secured custody. Specifically, except for inmates convicted of certain enumerated offenses, *see* 18 U.S.C. § 3632(d)(4)(D), or those with a final removal or deportation order, *id.*, § 3632(d)(4)(E), all inmates are eligible to earn up to 10 days of time credits for every 30 days of successfully completed BOP-approved "Evidence-Based Recidivism Reduction Programs" ("EBRR") and "Productive Activities" ("PAS"). *See* 18 U.S.C. §§ 3632(d)(4)(A)(i). Additionally, "[a] prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *See* 18 U.S.C. §§ 3632(d)(4)(A)(ii).

Among other incentives to encourage participation in EBRR and PAS, eligible inmates who have earned FTC may have such time credits applied toward their time in prerelease custody or supervised release. *See id.*, §§ 3632(d)(1)-(4)(C). Thus, "FSA time credits, when applied, advance the date when the prisoner will be placed in 'prerelease custody' (including home confinement or residential reentry facilities), or accelerate the date when the prisoner will leave BOP custody to start a term of court-imposed supervised release." *Komando v. Luna*, No. 22-cv-425-SE, 2023 WL 310580, at *4 (D.N.H. Jan. 13, 2023), *report and recommendation approved sub nom, Komando v. FCI Berlin, Warden*, 2023 WL 1782034 (D.N.H. Feb. 6, 2023) (citing *Hedges v. U.S.*

*Marshals Serv.*, No. 5:22-cv-294-DCR, 2022 WL 17177630, at *3 (E.D. Ky. Nov. 23, 2022)); *see also* 18 U.S.C. § 3624(g)(3) (BOP may apply up to twelve months of earned time credits to advance the date a prisoner begins to serve a term of supervised release).

Although all eligible inmates may *earn* FSA time credit, "only some inmates are eligible to *apply* those time credits." *Cannon v. Heckard*, No. 5:23-cv-00566, ECF No. 11 at 7 (S.D. W.Va., Jan. 17, 2024) (Eifert, M.J.) (report and recommendation). As set forth in 18 U.S.C. § 3624(g)(1), an inmate who has *earned* FTC may not have it *applied* to hasten prerelease custody or supervised release until the inmate:

> (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
>
> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and
>
> (D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner--
>
>> (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
>>
>> (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--
>>> (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
>>>
>>> (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
>>>
>>> (cc) the prisoner is unlikely to recidivate; or

7

>  (ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1); *see also* 28 C.F.R. § 523.44. Based upon the application of the FTC time credits, the BOP may transfer an inmate to begin his term of supervised release no more than one year prior his otherwise scheduled release date. 18 U.S.C. S 3624(g)(3).

Sections 3624(g)(1)(B) and (D)(i)(I) make it clear that, only inmates who are at a minimum or low risk of recidivism may automatically have their FTC applied to receive earlier transfer to pre-release custody or supervised release. *See, e.g., Gadsden v. Joseph*, No. 0:23-cv-2065-BHH-PJG, 2023 WL 8006375, at *2-3 (D.S.C. Oct. 27, 2023), *report and recommendation adopted*, 2023 WL 8005872 (D.S.C. Nov. 17, 2023) ("The statute defines an eligible prisoner, in part, as one who has 'shown through the periodic risk reassessments a demonstrated risk recidivism risk reduction or *has maintained a minimum or low recidivism risk*, during the prisoner's term of imprisonment.'"). However, the statute further provides that an inmate with a medium or high risk of recidivism classification may apply to the Warden for individual approval for application of FTC. *See Cannon, supra*, ECF No. 11 at 8 (citing *Smith v. Eischen*, No. 22-cv-1704 (NEB/DJF), 2023 WL 4203165, at *2 (D. Minn., June 27, 2023) ("Application of the FSA credits depend on maintaining a minimal or low risk of recidivism – or receiving an exception to that requirement from the warden[.]"); *Delgado v. Barraza*, No. 3:23-cv-881, 2023 WL 4553380, at *1 (M.D. Pa., July 14, 2023) ("Inmates with a high or medium PATTERN score can petition the warden to be

considered on an individual basis for placement in prerelease custody or supervised release.") (other citations omitted). However, Petitioner, who admits that he was at a medium risk level, does not allege that he petitioned the Warden at FCI Beckley for individual consideration for application of his FTC. Therefore, he has not demonstrated that he is eligible for application of such time credits.

### C. No right to judicial review through habeas corpus.

Petitioner's petition documents do not directly challenge his risk assessment and, indeed, acknowledge that he was at a medium risk level at the time he filed the petition. Rather, Petitioner simply appears to request that the court override the BOP's interpretation of the FSA and award him 365 days of FTC. (ECF No. 1 at 1). However, as noted by Respondent, the calculation of Petitioner's risk classification score and the BOP's decisions concerning his place of imprisonment and appropriateness for early release are discretionary decisions that are not subject to judicial review. *See* 18 U.S.C. §§ 3621(b), 3624(c)(4), and 3625. Thus, as asserted by Respondent, "any determinations, decisions, or orders made pursuant to 18 U.S.C. §§ 3621-3624 are exempted from review under the [Administrative Procedures Act ("APA")]. Congress' intentional placement of the eligibility determination aspect of the FSA in § 3624, where it is not reviewable under the APA, speaks to the intent of Congress for the BOP to exercise discretion in making such determinations." (ECF No. 11 at 10-11).

Consequently, Respondent contends that the statutory language makes it clear that the provisions regarding review by the Warden are discretionary in nature and no other provision makes such determination reviewable by the courts. (*Id.* at 12). Petitioner did not oppose or dispute these arguments. Thus, the undersigned agrees

that "there are no statutory or regulatory provisions that would permit this Court to mandate application of FTC to Petitioner's sentence so long as he remains at a medium risk recidivism level." (*Id.*)

Moreover, numerous federal courts have recently reiterated the fact that there is no protected liberty interest in pre-release custody, such as home confinement or RRC placement. *See, e.g., Burg v. Nicklin*, No. 19-cv-24, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) (recognizing the exclusive authority and discretion of the BOP over an inmate's placement in the context of the FSA); *see also United States v. Egan*, No. 10 Cr. 191, 2019 WL 1552266, at *1 (S.D.N.Y. Apr. 10, 2019) ("In recognition of [the BOP's] discretion, the few federal courts that have considered the recently-amended 34 U.S.C. § 60541(g) have found a district court has no power to use it to grant a prisoner early release to home detention." (citing *Zheng v. La Tuna Fed. Corr. Inst.*, No. 19-cv-97, 2019 WL 1472889, at *3 (Apr. 3, 2019) (declining to grant a request for home detention under 34 U.S.C. § 60541 as "any approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified the utilitarian grounds—collides with [18 U.S.C § 3621(b)], which gives the Attorney General unfettered discretion to decide where to house federal prisoners."))); *United States v. Curry*, No. 6:06-082, 2019 WL 508067, at *2 (E.D. Ky. Feb. 8, 2019) ("34 U.S.C. § 60541 only authorizes the Attorney General to modify the method of imprisonment. It does not permit the Courts to take such action."); *Bushey v. Butler*, No. 1:12-cv0572, 2012 WL 2130972, at *4 (S.D. W. Va. June 12, 2012) (noting that where an inmate challenges BOP RRC placement decisions, the "court is very limited in the relief it may grant in reviewing the BOP's determination"). Therefore, because prisoners

do not have a protected liberty interest in being placed on home confinement or in an RRC, which merely changes the location of their custodial confinement, Petitioner cannot demonstrate a right to habeas corpus relief. *See Whittenberg v. Ziegler*, No. 5:12-cv-01430, 2015 WL 2406111, at *1 n.2 (S.D. W. Va. May 19, 2015) (providing a detailed analysis of why inmates do not possess a constitutionally protected interest in home or community confinement). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner is not entitled to the relief sought in his petition, which must be dismissed and denied.

### D. This court cannot shorten Petitioner's supervised release term.

Petitioner's July 31, 2023 letter-form motion requests, in part, that the court "take a year (365 days) off [his] probation." (ECF No. 12 at 1). The undersigned construes this motion to be seeking an order shortening his six-year term of federal supervised release that was imposed as part of his criminal sentence. This court lacks authority to grant such relief.

"[W]hile the [FSA's time credit] program permits early transfer to supervised release, it does not grant the BOP authority to reduce or shorten a prisoner's term of supervised release." *Orasco v. Yates*, No. 2:22-cv-156, 2022 WL 18027627, at *3 n.4 (E.D. Ark. Dec. 12, 2022); *see also United States v. Calabrese*, No. 1:11-cr-00437, 2023 WL 1969753, at *2 (N.D. Ohio Feb. 13, 2023). As noted by the court in *Calabrese*:

> [T]he statute provides that time credits shall be applied *toward* supervised release. Use of the word "toward" means that credits can be applied to bring "time in prerelease custody or supervised release" closer to occurring because credits applied "toward" something generally means to bring that something closer to happening. Black's Law Dictionary (11th ed. 2019) (defining "toward," in relevant part, as "in the direction of; on a course or line leading to (some place or something)"). Further, Section

11

> 3632(d)(4)(C) instructs the BOP to transfer eligible prisoners into prerelease custody or supervised release, citing Section 3624(g), which defines "eligible prisoners" as one who "has earned time credits under the [FSA] in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." This clearly provides that the time credits are to reduce the prisoner's prison term. * * * This provision does not suggest that the term of supervised release might be reduced (or eliminated) because of time credits. Rather it contemplated that the prisoner will be released to begin any such term of supervised release that was include in a prisoner's sentence. Plainly, the FSA allows a prisoner to either complete the service of their sentence in prerelease custody or complete their term of supervised release at an earlier date by transferring the prisoner to supervised release at an earlier date—the FSA does not allow a prisoner to reduce the imposed length of supervised release. [*Harrison v. Fed. Bureau of Prisons*, No. 22-14312, 2022 WL 17093441, at *1 (S.D. Fla. Nov. 21, 2022)] ("Based on the plain text of the statute, FSA credits cannot be used to shorten a term of supervised release. Rather, the credits can only be used to allow early transfer to supervised release.")

*Id.* at *2-3.

The Supreme Court has also specifically held that the length of a term of supervised release cannot be reduced "by reason of excess time served in prison," noting that the "rehabilitative ends [of supervised release are] distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *see also Goldblatt v. Ortiz*, 2022 WL 1639007, at *2 (D.N.J. May 24, 2022) (applying *Johnson* to the § 2241 context and finding that "the supervised release statute, 18 U.S.C. § 3624, does not permit a court to credit a supervised release term with a period of excess prison time."). Moreover, only the sentencing court may modify or terminate an individual's term of supervised release in accordance with the terms of 18 U.S.C. § 3583(e). *See Harrison*, 2022 WL 17093441, at *2. Thus, this court, which is not the sentencing court, is unable to grant Petitioner the relief he seeks herein.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and his Motion to Grant Home Confinement or Adjust Probation (ECF No. 12) and **DISMISS** this civil action from the docket of the court.

Petitioner is notified that this "Proposed Findings and Recommendation" is hereby filed, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (making of objections), and then three days (service/mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Volk.

The Clerk is directed to file this "Proposed Findings and Recommendation," to mail a copy of the same to Petitioner, and to transmit a copy to counsel of record.

February 1, 2024

Dwane L. Tinsley
United States Magistrate Judge